IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EVE BREWER | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| KEY BANK, N.A. | : | NO. 23-747 |

## MEMORANDUM

**Padova, J.**                                                   **September 3, 2024**

Plaintiff Eve Brewer filed this employment discrimination action against her former employer, Defendant KeyBank, N.A., after she gave birth to a child and was subsequently terminated from her job as a Personal Banker.   Brewer asserts violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., as amended by the Pregnancy Discrimination Act ("PDA"); the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Stat. § 951 et seq.; and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq.   Both KeyBank and Brewer have filed Motions for Summary Judgment, with KeyBank seeking judgment in its favor on all of Brewer's claims, and Brewer seeking judgment in her favor, as to liability only, on her PDA claims for discrimination, failure to accommodate, and retaliation.   For the following reasons, we grant KeyBank's Motion, deny Brewer's Motion, and enter judgment in KeyBank's favor.

## I.    BACKGROUND

Plaintiff Eve Brewer became an employee of Defendant KeyBank in 2016.  (Concise Statement of Stipulated Material Facts ("SMF") ¶ 9.)   During her entire tenure with the bank, she worked as a Personal Banker.  (Id. ¶ 10.)

In April of 2021, Brewer was pregnant and working at KeyBank's Harleysville branch when a co-worker left work early on a Friday, telling Brewer that she had shingles.  (Id. ¶¶ 11-

12.)   When Brewer arrived at work the following Monday, she encountered the same co-worker. (Id. ¶ 12.)   Brewer was concerned for her health because of her pregnancy and therefore contacted the Harleysville branch manager and asked if she could be relocated to another branch.   (Id.) KeyBank granted the request and temporarily transferred Brewer to its Skippack branch.   (Id. ¶ 13.)

Three months later, in July of 2021, Brewer was transferred to the North Coventry branch in Pottstown, Pennsylvania, where branch manager Donna Freas was her supervisor.   (SMF ¶¶ 14-15.)   Because of her pregnancy, Brewer requested that she be relieved of her teller duties due to the "prolonged periods of standing and extensive movement" that they required.   (Id. ¶ 18.) Brewer provided a doctor's note to that effect, and KeyBank relieved her of her teller duties.   (Id. ¶ 19.)   At the same time, according to Brewer, "Freas made disparaging comments regarding her pregnancy," including "telling everyone to take time off prior to [Brewer] going out on her pregnancy leave."   (Id. ¶ 20.)   When asked about this at her deposition, Freas testified that it was KeyBank's policy that there not be more than one person out at a time, so she felt it important to have a conversation to make sure that the branch was staffed appropriately, taking Brewer's maternity leave into account.   (Freas Dep., Brewer Ex. D, at 25-26.)

Brewer's leave of absence began on August 26, 2021.   (KeyBank Ex I.)   Her child was born on September 5, 2021.   (SMF ¶ 22.)   She took one week of PTO and then six weeks of maternity leave, followed by short-term medical leave ("STML").   (Brewer Dep., Brewer Ex. B, at 212.)   Brewer's leave under the FMLA ran concurrent with her maternity leave and STML. (Id. at 212-13.)   On November 24, 2021, three months after the start of her leave of absence, Brewer received notification from The Hartford, KeyBank's third-party leave administrator, that her FMLA leave had ended the day before and her job was no longer protected.   (SMF ¶ 23;

Shaffer-McLoud Dep., Brewer Ex. C, at 14.)

On December 23, 2021, Freas requested approval from KeyBank's Employee Relations Department to fill Brewer's Personal Banker position at the North Coventry branch.   (SMF ¶ 24.)   Freas testified that she made this inquiry because she was "concerned for the branch," had to "mak[e] sure that [she had] adequate staff," and needed someone in Brewer's role in order to run the branch successfully.   (Freas Dep. at 36, 54, 57.)   She elaborated at her deposition: "[U]p to that point I was running with just one Personal Banker and myself, so we were starting to slip in our numbers, we were starting to not be able to meet our daily tasks of calling – outbound calling efforts, so there was a need for . . . there to be two Personal Bankers in that role at that branch." (Id. at 34.)

On January 13, 2022, Freas sent Brewer a letter, reiterating what The Hartford had already told Brewer, i.e., that because her 12 weeks of FMLA leave had expired, her job was no longer protected.   (SMF ¶ 25; KeyBank Ex. I.)   That same day, The Hartford denied Brewer's request for an extension of her STML.   (SMF ¶ 26; KeyBank Ex. J, at 1.)   Brewer immediately appealed the denial, writing in her appeal that she was being treated by three physicians and a therapist, all of whom were still trying to diagnose her ongoing health issues.   (SMF ¶¶ 27- 28.)   She also wrote that two of the health care providers, Dr. Robert Kimelheim and Physician Assistant Kathryn Waverka ("PA Waverka") (id. ¶ 31; KeyBank Ex. K, at 2 of 3), had not approved her "return[] to work, pending current treatment and upcoming appointments and blood work results."   (SMF ¶ 29 (alteration in original).)   Brewer added: "[w]ith the above description of my position I find it difficult to perform my duties to the best of my abilities. . . . I am trying very hard to not go into long term disability and I have a goal to find a diagnosis or a treatment by February 23, 2022." (Id. ¶ 30 (alteration in original).)

On January 19, 2022, PA Waverka completed a medical form from The Hartford, in which she stated that Brewer was medically released to return to work on February 23, 2022, with certain restrictions.  (Id. ¶¶ 31-32.)  Nine days later, on January 28, 2022, Brewer completed a Medical Records Release Form for Premier Orthopaedics, writing on the form: "Please fill out restrictions of work + Return to work date *subject to MRI findings is fine for return to work.*"  (Id. ¶¶ 35-36.)  Brewer stated that she made this request because she did not "want them to make a determination until the MRI was reviewed."  (Id. ¶ 37.)  On February 4, 2022, Dr. James Guille of Premier Orthopaedics provided The Hartford with a progress report, on which he crossed out the section that called for an assessment of Brewer's level of functionality and wrote: "patient to be re-evaluated after MRI performed."  (Id. ¶¶ 33-34.)

On February 8, 2022, Brewer applied for long-term disability benefits.  (Id. ¶ 38.) Brewer's application was subject to her certification that any person who knowingly makes materially false statements in an application for insurance with an intent to defraud commits a fraudulent insurance act, which is a crime.  (Id. ¶ 39.)  In the section of the application entitled "Information about the Disability," Brewer wrote that the date that she was first unable to work was August 25, 2021, and she answered "No" to the follow-up question: "If you have not returned to work, do you expect to?"  (KeyBank Ex. N, at 2.)  At her deposition, Brewer explained that she did not provide an anticipated return date despite her medical clearance because she was planning to take parental leave when her STML expired.  (Brewer Dep. at 250-52, 254.)  Indeed, under KeyBank's Parental Leave Policy, "[e]ligible employees . . . receive up to ten consecutive weeks of paid Parental Leave" after the birth of a child, although where an employee takes medical leave due to a child's birth, the employee is only permitted to "take Parental Leave for bonding purposes after . . . Employee Medical Leave ends and [the employee is] released to return to work."

(KeyBank Ex. C, at 1-2; SMF ¶ 5.)

On March 3, 2022, Dr. Kimelheim, with Penn Medicine's Department of Rheumatology, sent a status update to The Hartford, stating:

> Eve Brewer is currently under our care for Inflammatory Back Pain. She was initially seen in our office on 12/06/21. . . .  Her most recent visit was 01/31/2022 and at this point we made the decision to put her on an injectable medication.   This medication can take up to 3 months to improve symptoms.   Due to insurance denying the medication request, we are now in the appeal process.   We are looking to have a decision by 03/08/2022, if approved, delivery will be set up and patient will then be able to start treatment.

(SMF ¶ 41 (alteration in original).)   On March 7, 2022, Brewer's appeal of The Hartford's denial of STML was successful, and she was retroactively granted STML through February 23, 2022. (Id. ¶ 42; KeyBank Exs. Q-R.)

On March 9, 2022, Robin Shaffer-McLoud, KeyBank's clinical consultant, called Brewer and told her that they were terminating her employment because she did not have a return-to-work date.   (Brewer Dep. at 214-15; Shaffer-McLoud Dep. at 12-13.)   Brewer asked Shaffer-McLoud about her ten weeks of parental leave, stating that she "was trying to use [her] Parental bonding period from . . . the 24th . . . [or] the 25th," when her STML expired.   (Brewer Dep. at 217-19.) That same day, Shaffer-McLoud sent Brewer a letter, noting that their records indicated that she had transitioned to long-term medical leave on February 24, 2022, and that her "Healthcare Provider ha[d] not provided an actual or estimated release date for [her] to return to work." (KeyBank Ex. Y.)   The letter explained that she was therefore being terminated because her leave was "considered indefinite."   Id.   It further stated that her "termination [would] be classified as a 'Termination Under Long Term Disability,'" because she had been out of work for over 180 days. (Id.)   Brewer was disappointed that she could not get her ten weeks of parental leave under KeyBank's Parental Leave Policy, and that same day, she contacted employee relations and spoke

5

with employee relations consultant Amanda Tesar.  (SMF ¶¶ 43-44.)  According to Tesar's account of that call, Brewer stated that she wanted to be re-instated and to use her parental leave. (Brewer Ex. F, at 2.)  Shaffer-McLoud advised Tesar that she had told Brewer that she could not commence parental leave in the absence of a medical release, which she did not have.  (Id. at 1.) On March 15, 2022, Brewer was approved for long-term disability benefits retroactive to February 24, 2022, and she has been receiving long-term disability benefits since.  (SMF ¶ 40; KeyBank Ex. O.)

On November 23, 2022, Brewer filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").  (SMF ¶ 45.)  She also dual-filed her Charge with the Pennsylvania Human Relations Commission ("PHRC").  (Id. ¶ 46.)  Brewer filed her Complaint in this action on February 27, 2023.  The Complaint contains nine Counts.  Counts I through IV assert claims under the PDA for discrimination, failure to accommodate, retaliation, and harassment/hostile work environment.  Counts V through VIII assert the same types of claims under the PHRA.  Count IX asserts a claim entitled "FMLA Interference."

KeyBank filed a Motion for Summary Judgment on November 16, 2023, which was the dispositive motions deadline set forth in the operative October 27, 2023 Scheduling Order. Brewer filed a belated response to KeyBank's Motion, as well as an untimely cross-Motion for Partial Summary Judgment, on December 7, 2023.  KeyBank moved to strike Brewer's untimely cross-Motion, but we denied the motion to strike and allowed KeyBank time to respond to the cross-Motion.  Both Motions for Summary Judgment are now ripe for disposition.

## II.    LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a).   An issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."   Anderson v. Liberty Lobby. Inc., 477 U.S. 242, 248 (1986).   A factual dispute is "material" if it "might affect the outcome of the suit under the governing law."   Id.   In ruling on a summary judgment motion, we consider "the evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion."   Jacobs v. Cumberland Cnty., 8 F.4th 187, 192 (3d Cir. 2021) (citing Bland v. City of Newark, 900 F.3d 77, 83 (3d Cir. 2018)).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."   Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).   Where the nonmoving party bears the burden of proof on a particular issue at trial, the movant's initial Celotex burden can be met simply by "pointing out to the district court" that "there is an absence of evidence to support the nonmoving party's case."   Id. at 325. After the moving party has met its initial burden, the adverse party's response must support the assertion that a fact is genuinely disputed by "citing to particular parts of materials in the record" or "showing that the materials [that the moving party has cited] do not establish the absence . . . of a genuine dispute."   Fed. R. Civ. P. 56(c)(1).   Summary judgment is appropriate if the nonmoving party fails to respond with a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."   Celotex, 477 U.S. at 322.   "'While the evidence that the non-moving party presents may be either direct or circumstantial, and need not be as great as a preponderance, the evidence must be more than a scintilla.'"   Galli v. New Jersey Meadowlands Comm'n, 490 F.3d 265, 270 (3d Cir. 2007) (quoting Hugh v. Butler Cnty. Fam. YMCA, 418 F.3d 265, 267 (3d Cir. 2005)).

However, "[u]nsupported assertions, conclusory allegations, or mere suspicions are insufficient to overcome a motion for summary judgment." Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 252 (3d Cir. 2010) (citing Williams v. Borough of West Chester, 891 F.2d 458, 460 (3d Cir. 1989)).

## III. DISCUSSION

Brewer brings her discrimination claims pursuant to the PDA, the PHRA, and the FMLA. Specifically, she brings claims under the PDA and PHRA for pregnancy discrimination, failure to accommodate, harassment/hostile work environment, and retaliation, and she also brings a claim under the FMLA for interference. KeyBank seeks judgment in its favor on all of Brewer's claims. Brewer seeks judgment in her favor, as to liability only, on her PDA claims for discrimination, failure to accommodate, and retaliation.

### A. The PDA

Title VII makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). The PDA amended Title VII to "make[] clear that Title VII's prohibition against sex discrimination applies to discrimination based on pregnancy. It also says that employers must treat 'women affected by pregnancy . . . the same for all employment-related purposes . . . as other persons not so affected but similar in their ability or inability to work.'" Young v. United Parcel Serv., Inc., 575 U.S. 206, 210 (2015) (quoting 42 U.S.C. § 2000e(k)). "Courts analyze PDA claims as sex discrimination under Title VII." Brown v. Aria Health, Civ. A. No. 17-1827, 2019 WL 1745653, at *5 (E.D. Pa. Apr. 17, 2019) (citation omitted). Claims that may be brought under the PDA include pregnancy discrimination, failure to accommodate, retaliation, and hostile work environment/harassment. Brewer brings all four types of claims.

### 1.  Pregnancy Discrimination

Where, as here, a PDA plaintiff lacks direct evidence of discrimination,[1] she may still make out a discrimination claim based on circumstantial evidence under the burden-shifting framework set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).  "Under this analysis, the employee must first establish a *prima facie* case."  <u>Doe v. C.A.R.S. Prot. Plus, Inc.</u>, 527 F.3d 358, 364 (3d Cir. 2008).  If she is able to do so, "the burden shifts to the employer to provide a legitimate, nondiscriminatory reason for its adverse employment decision."  <u>Id.</u>  Once the employer does so, "the burden shifts back to the employee, who, to defeat a motion for summary judgment, must show that the employer's articulated reason was a pretext for intentional discrimination."  <u>Id.</u>

"[T]o establish a prima facie case of pregnancy-related discrimination under Title VII . . . a plaintiff must show that (1) 'she is or was pregnant and that her employer knew she was pregnant,' (2) 'she was qualified for her job,' (3) 'she suffered an adverse employment decision,'

---

[1] Brewer argues that she has presented direct evidence of discrimination based on her pregnancy because she was terminated based on her medical condition and the leave arising from it, and her medical condition was caused by her pregnancy.  However, a plaintiff seeking to proceed on direct evidence "confronts a 'high hurdle'" to "demonstrate that the 'decision makers placed substantial negative reliance on an illegitimate criterion in reaching their decision.'" <u>Anderson v. Consol. Rail Corp.</u>, 297 F.3d 242, 248 (3d Cir. 2002) (quoting <u>Connors v. Chrysler Fin. Corp.</u>, 160 F.3d 971, 976 (3d Cir. 1998)).  "Direct evidence of discrimination [is] evidence which, if believed, would prove the existence of the fact [in issue] *without inference or presumption*."  <u>Torre v. Cassio, Inc.</u>, 42 F.3d 825, 829 (3d Cir. 1994) (second alteration in original) (quotation omitted).  In pregnancy discrimination cases, such evidence is commonly "in the form of an admission by a decisionmaker that an employee's pregnancy affected an employment decision, such as suspending or terminating an employee because she was pregnant." <u>Parish v. UPMC Univ. Health Ctr. of Pittsburgh</u>, 373 F. Supp. 3d 608, 625 (W.D. Pa. 2019) (quotation omitted).  Brewer simply does not meet this high hurdle here, as she presents no direct evidence, including no KeyBank admission, that she was terminated because she was pregnant.  Rather, by arguing that she was terminated for taking medical leave, which was caused by her pregnancy, Brewer necessarily relies on inferences and presumptions.  We therefore reject Brewer's assertion that this is a direct evidence case.

and (4) 'there is some nexus between her pregnancy and her employment termination that would permit a fact-finder to infer unlawful discrimination.'" Donnelly v. Cap. Vision Servs., LLC, 644 F. Supp. 3d 97, 104-05 (E.D. Pa. 2022) (quoting C.A.R.S. Prot. Plus, 527 F.3d at 365).

Here, Brewer argues that she has established a prima facie case of pregnancy discrimination because the undisputed facts of record establish that she was pregnant and qualified for her position; she was subjected to adverse employment actions insofar as KeyBank refused to allow her to return to work on February 23, 2022, refused to allow her to take parental leave, and terminated her employment on March 9, 2022; and there was a nexus between the adverse actions and her pregnancy that allows for an inference of discrimination. She further argues that no reasonable juror could find that KeyBank had a legitimate nondiscriminatory reason for the adverse actions. She thus maintains that summary judgment should be entered in her favor on her PDA claim.

KeyBank does not dispute that Brewer was pregnant and that she suffered an adverse employment decision at least insofar as her employment was terminated. It argues, however, that she has not made out a prima facie case of pregnancy discrimination because the undisputed evidence in the summary judgment record establishes that she could no longer perform the functions of her job at the time of the adverse actions and thus, she was no longer qualified for her position. KeyBank also argues that she cannot establish that its legitimate nondiscriminatory reasons for its actions were pretextual.[2] It thus seeks summary judgment in its favor on the PDA discrimination claim.

---

[2] In addition, KeyBank argues that Brewer cannot establish the nexus element of her prima facie case. However, we need not address that argument because we find that judgment should be entered in KeyBank's favor based both on Brewer's failure to establish the qualifications element and on her inability to establish that KeyBank's reasons for the alleged adverse actions were pretextual.

a. Qualifications

In a Title VII action, whether an employee is qualified for her job "turn[s] on whether [she] is able to perform . . . the job." Makky v. Chertoff, 541 F.3d 205, 215 (3d Cir. 2008).    In evaluating a plaintiff's prima facie case, the focus is on the employee's objective job qualifications rather than the employer's subjective evaluation of job performance.    Weldon v. Kraft, Inc., 896 F.2d 793, 798 (3d Cir. 1990).   KeyBank argues that Brewer cannot establish that she was physically able to perform her job in late February or early March of 2022, pointing to the evidence that she applied for long-term disability on February 8, 2022, did not provide an expected return-to-work date in her application, was ultimately granted long-term disability retroactive to February 24, 2022, and has remained on long-term disability since.   Brewer counters that the undisputed evidence clearly establishes that she was able to perform the essential functions of her job as of February 23, 2022, because one of her medical providers gave her a February 23, 2022 return-to-work date, she testified at her deposition that she was capable of returning to work on that date, and she has adequately explained her failure to provide a return-to-work date in her long-term disability application.

As noted above, the record reflects that on February 8, 2022, one month before her termination, Brewer filed an Application for Long-Term Disability Income Benefits with The Hartford.  (KeyBank Ex. N.)   In that application, she stated that the conditions that caused her disability were "Gestational Hypertension, cholestasis, severe migraines, fibromyalgia, and ankylosing spondylitis."   (Id. at 1.)   In the section entitled "Information about the Disability," she wrote that the date that she was first unable to work was August 25, 2021, and she answered "No" to the follow-up question: "If you have not returned to work, do you expect to?"   (Id. at 2.) Having represented that she did not expect to return to work, she left blank the fields requesting

the dates on which she expected to return either part time or full time.[3]   (Id.)   She signed that application, indicating that the statements in the application were true and complete to the best of her knowledge.   (Id. at 5.)   Her signature also verified that she understood that Pennsylvania law provides that "[a]ny person who knowingly and with intent to defraud any insurance company . . . files an application for insurance . . . containing any materially false information or conceals for the purpose of misleading, information concerning any fact material hereto commits a fraudulent insurance act, which is a crime . . . ."   (Id. at 4-5.)   On March 15, 2022, Brewer received a letter, in which The Hartford approved her long-term disability claim and awarded her long-term disability benefits retroactive to February 24, 2022.   (KeyBank Ex. O.)   That letter clarified that, in order for benefits to continue, The Hartford would "confirm from time to time that [Brewer's] condition still prevent[ed] her from doing one or more of the essential duties of [her] occupation." (Id.)   Brewer confirmed at her deposition that she is still receiving those long-term disability benefits.   (Brewer Dep. at 190-91.)

This undisputed evidence conclusively demonstrates that, based on her own sworn inability to perform the essential duties of her job, she collected long-term disability benefits starting on February 24, 2022, and through and beyond March 9, 2022, the day of her termination.   Brewer

---

[3] Brewer testified at her deposition that she checked the "No" box in response to the question of whether she expected to return to work because she intended to take ten weeks of parental leave, not because she was unable to work.   (Brewer Dep. at 250-252, 254.)   This demonstrates, at best, a fundamental misunderstanding of the question on the disability application, which was plainly probing whether she expected her disability to continue and whether she expected to be able to return to work at any date in the future.   Moreover, it does not explain why, if she was no longer disabled, but intended to take ten weeks of parental leave, she did not provide an anticipated return date ten weeks in the future.   And, finally, irrespective of her subjective understanding of this particular question on the long-term disability application, the fact remains that she filed the application seeking payment of long-term disability benefits based on her professed inability to perform her job, and she was ultimately paid those benefits retroactive to February 24, 2022.

nevertheless argues that she could have returned to her job at KeyBank with restrictions on February 23, 2022, and was therefore "qualified" for the Personal Banker position on that date. (Brewer Dep. at 55-56.)   She points to her own deposition testimony that she could have returned, as well as to a January 19, 2022 report from a physical medicine and rehabilitation doctor treating her for "hip pain, hand pain, and muscle spasms," which stated that "paperwork [was] faxed over today for her return to work date of 2/23/22."[4]   (Brewer Ex. G, at 1, 3; see also Brewer Ex. H, at 2-3 (setting forth the 2/23/22 return-to-work date restrictions).)   Brewer also cites a prior January 12, 2022 neurologist's report, in which she was cleared to return to work "from a neurologic standpoint."   (Brewer Ex. K, at 6 of 7.)

However, contrary to Brewer's argument, this evidence does not support a reasonable inference that she was able to return to work on February 23, 2022, or even create a genuine dispute of material fact regarding her ability to perform her job on February 23, 2022, when she claims she desired to return, or on March 9, 2022, when her employment was terminated.   As noted above, after PA Waverka gave her a February 23, 2022 return-to-work date, Dr. Guille sent to The Hartford a contrary February 4, 2022 progress report, in which he crossed out the portion of the form in which he would have provided a functional assessment, did not clear her to return, and stated that she needed an as-yet-unscheduled MRI to re-assess her functionality.   (KeyBank Ex. M, at 1.)   Moreover, on February 23, 2022, the date Brewer claims she could have returned, Sarah Kauffman, CRNP, from Premier Orthopaedics, wrote in her treatment notes that Brewer "should refrain from work until her PT evaluations and SI injections are completed" and should be re-evaluated four weeks in the future.   (KeyBank Ex. W, at 2-3.)   And, finally, the fact that Brewer

---

[4] The January 19, 2022 report also noted that Brewer was on short-term disability, "cannot stand and work her normal job duties at this time," and "will need to be off work until further treatment is completed."   (Brewer Ex. G, at 1.)

was terminated two weeks <u>after</u> February 23, 2022, having not yet returned to work, further undermines any potential inference that she had been cleared to, and was able to, return to work, and yet was terminated anyway.  No reasonable jury, looking at this evidence, could conclude that Brewer could return to work—performing the essential functions of her job—as of February 23, 2022.

Moreover, even assuming for the sake of argument that the medical records could leave a factfinder with any lingering doubt as to Brewer's ability to perform her job on February 23, 2022, those doubts would be firmly resolved by the undisputed facts, detailed above, that Brewer applied for long-term disability benefits on February 8, 2022 based on her sworn inability to perform the functions of her job, certified at the time that she had no date on which she expected to return to work, and has been collecting those long-term disability benefits since February 24, 2022, the day after her short-term disability benefits expired.   Indeed, Brewer's application for, acceptance of, and continuing collection of those long-term disability benefits can only be understood as an admission that she was unable to perform her job on February 23, 2022, and has been unable to do so since.

In sum, even construing the evidence in the light most favorable to Brewer and drawing all reasonable inferences in her favor, no reasonable jury could conclude that Brewer could perform her job on February 23, 2022, the date on which she claims she was cleared to return and could have returned, or on March 9, 2022, the date on which her employment was terminated.  We therefore conclude that Brewer has not established an essential element of her prima facie case, i.e., that she was qualified for the Personal Banker position in late February and early March of 2022.  Consequently, KeyBank is entitled to summary judgment in its favor on Brewer's PDA discrimination claim based on her failure to establish this element of her prima facie case.

b.  Legitimate Nondiscriminatory Reasons and Pretext

While KeyBank is entitled to judgment in its favor based on Brewer's inability to establish her prima facie case, we will also address KeyBank's alternative argument that it is entitled to summary judgment on the PDA discrimination claim because Brewer identifies no evidence that could support a conclusion that KeyBank's legitimate nondiscriminatory reasons for its adverse actions were pretextual.  As noted above, Brewer asserts that she was subjected to adverse employment actions insofar as she was terminated and not permitted to take parental leave.[5]

An employer satisfies its burden to produce a nondiscriminatory reason for an unfavorable employment decision "by introducing evidence which, taken as true, would permit the conclusion" that there was such a reason, and need not prove that "the tendered reason *actually* motivated its behavior."  Fuentes v. Perski, 32 F.3d 759, 763 (3d Cir. 1994) (citation omitted)); Tomasso v. Boeing Co., 445 F.3d 702, 706 (3d Cir. 2006) (quoting Fuentes, 32 F.3d at 763).  This is a "relatively light burden."  Fuentes, 32 F.3d at 763.  Once that burden is satisfied, a plaintiff may establish that the employer's reason is pretextual by "point[ing] to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action."  Burton v. Teleflex, Inc., 707 F.3d 417, 427 (3d Cir. 2013) (quoting Fuentes, 32 F.3d at 764).

In relying on the first method of establishing pretext, a plaintiff must cast sufficient doubt on the employer's reasoning "to satisfy the factfinder that the employer's actions could not have

---

[5] Brewer also argues that she suffered an adverse employment action insofar as she was not permitted to return to work on February 23, 2022.  However, as we explain at greater length later in this Memorandum, there is no evidence to support a reasonable conclusion that KeyBank stopped Brewer from returning to work on February 23, 2022.  Thus, Brewer's PDA discrimination claim based on that purported adverse action is plainly meritless.

been for nondiscriminatory reasons." Willis v. UPMC Children's Hosp. of Pittsburgh, 808 F.3d 638, 644-45 (3d Cir. 2015) (citing Fuentes, 32 F.3d at 765). "To discredit the employer's proffered reason, however, the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." Fuentes, 32 F.3d at 765 (citations omitted). "Rather, the . . . plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them unworthy of credence" and infer that the employer did not act for those reasons. Id. (quotation and citations omitted). In other words, a plaintiff must show that the proffered reason "was so plainly wrong that it cannot have been the employer's real reason." Keller v. Orix Credit All., Inc., 130 F.3d 1101, 1109 (3d Cir. 1997). "While this standard places a difficult burden on the plaintiff, '[i]t arises from an inherent tension between the goal of all discrimination law and our society's commitment to free decisionmaking by the private sector in economic affairs.'" Fuentes, 32 F.3d at 765 (alteration in original) (quoting Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 531 (3d Cir. 1992)).

KeyBank maintains that it terminated Brewer based on legitimate nondiscriminatory business considerations. In support of this assertion, it first points to its Employee Medical Leave Policy, which specifically permitted it to "replace, eliminate or modify [Brewer's] position while [she was] on Employee Medical Leave based on its business considerations." (SMF ¶ 2.) It asserts that it acted in accordance with this nondiscriminatory policy when Freas sought to fill Brewer's personal banking position due to the business needs of the branch, and it points to Freas's deposition testimony to that effect. (See Freas Dep. at 34, 36, 54, 57.) It adds that it is undisputed

that Shaffer-McLoud concluded based on a review of Brewer's medical records that Brewer's leave was indefinite because she had no return-to-work date and "still had impairments and required further testing."   (KeyBank Mem. at 19; see Shaffer-McLoud Dep. at 63-64.)   KeyBank thus maintains that the record fully supports its explanation that it terminated Brewer's employment due to business considerations that required Brewer's position to be filled in light of her already-long absence and failure to provide an anticipated return date.   KeyBank adds that Brewer had no entitlement to parental leave at that time because its Parental Leave Policy required that employees on medical leave be cleared to return to work before commencing such leave and Brewer had not been cleared to return to work.   (See KeyBank Ex. C, at 2; SMF ¶¶ 5.)

There can be no question that this evidence, taken as true, permits the conclusion that there was a legitimate nondiscriminatory reason for Brewer's termination and denial of parental leave.[6] Accordingly, KeyBank has met its burden of production and the burden thus shifts back to Brewer to establish that KeyBank's reasons are pretextual.   Brewer attempts to do so by arguing that a jury could reasonably conclude that KeyBank's stated reasons are completely incredible.

To discredit KeyBank's reasons, Brewer argues that Shaffer-McLoud could not possibly have concluded, based on the medical records before her, that Brewer's leave was indefinite, because there was a document in those records that set forth a February 23, 2022 return date, and no other records explicitly stated that she was not cleared to return.   Brewer further argues that the record disproves that KeyBank had a business need to hire a replacement for her position when

---

[6] The pertinent heading in Brewer's Memorandum in Opposition to KeyBank's Motion for Summary Judgment reads: "No Reasonable Juror Could Find Defendant Had A Legitimate Non-Discriminatory Reason For The Adverse Employment Actions Taken Against Plaintiff."   (Brewer Mem. at 11.)   However, underneath that heading, Brewer attempts to rebut KeyBank's proffered reasons for her termination.   Accordingly, we interpret Brewer's argument to be that KeyBank's proffered reasons are pretextual.

it terminated her in March of 2022, because no one actually took over her position until April of 2022.

However, we conclude that no factfinder, looking at the medical records in this case, could possibly conclude that Shaffer-McLoud's determination that Brewer's leave was indefinite was "so plainly wrong" that it could not have been a legitimate nondiscriminatory reason for Brewer's termination.  Keller, 130 F.3d at 1109.  This is because the only return-to-work date in the medical record had already passed two weeks before Brewer's termination, and Brewer's more recent medical records easily supported a reasonable conclusion that Brewer needed further treatment of indefinite duration before her functionality could even be reassessed.  It is therefore hard to even fathom how Shaffer-McLoud's determination could be deemed incorrect, much less so plainly wrong that it was potentially a pretext for discrimination.

We also find meritless Brewer's argument that there is evidence from which a reasonable jury could conclude that KeyBank's asserted business need for someone to be working Brewer's position has "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" as to be "unworthy of credence."  Fuentes, 32 F.3d at 765 (quotation and citations omitted).  As noted above, Freas testified that since Brewer had been out on leave, she had been functioning with just one Personal Banker despite needing two to run the branch successfully, that she was "concerned for the branch," and that she needed "mak[e] sure that [she had] adequate staff," which included having someone in Brewer's role.  (Freas Dep. at 34, 36, 54, 57.)  She elaborated that the branch's numbers had been "starting to slip" and the branch was "starting to not be able to meet [its] daily tasks of calling – outbound calling efforts."  (Id. at 34; see also Tannous Dep., KeyBank Ex. H, at 29-30 (testifying that with only one banker available, "it was a challenging time" for the branch, which was open six days a week, and "the business had a need for getting a

second banker . . . to service [its] clients and make sure that [it could] continue operating efficiently").)   The undisputed evidence is also that, in late January of 2022, KeyBank identified Kevin Pierce, an existing employee at another branch to take over Brewer's role.   (Tannous Dep. at 31, 33; see also Shaffer-McLoud Dep. at 49-52.)   That transfer was delayed until April of 2022 because Pierce's branch was being consolidated with another branch, and it was decided to officially transfer him to the North Coventry branch pursuant to a transitional plan after the consolidation was complete.   (Tannous Dep. at 31-33.)   Brewer offers no evidence to dispute this account and instead, argues that a jury could conclude based on the timing of the transfer alone that KeyBank had no real business need to replace her in March of 2022.   However, we find this evidence to be patently insufficient to discredit KeyBank's assertion, supported by evidence, that it had a genuine business need for the North Coventry branch to have two functioning Personal Bankers.   Thus, no reasonable jury, looking at this record, could reach Brewer's contrary conclusion.

For these reasons, Brewer has failed to point to evidence from which a reasonable jury could conclude that KeyBank's proffered business reasons are pretextual and that the real reason for her termination—and refusal of parental leave—was discrimination based on her pregnancy. We therefore conclude that Brewer has failed to meet her burden of establishing that KeyBank's reasons for its adverse actions against her were pretextual.

In sum, we enter judgment in KeyBank's favor not only because Brewer cannot establish a prima facie case of pregnancy discrimination, but also because she cannot establish that KeyBank's proffered legitimate nondiscriminatory reason for her termination was pretext for discrimination.   Thus, we grant KeyBank's Motion for Summary Judgment insofar as it seeks judgment in its favor on Brewer's PDA discrimination claim, and we deny Brewer's cross-Motion

for Summary Judgment in her favor on that same claim.

### 2. Failure to Accommodate.

Brewer claims that KeyBank violated the PDA by failing to accommodate her insofar as it denied her medical leave and refused to permit her to return to work with certain restrictions.   A PDA failure to accommodate claim, which prohibits employers from discriminating in the way they treat pregnancy-related inability to work, is grounded in the PDA's second clause, which states that "women affected by pregnancy . . . shall be treated the same for all employment-related purposes . . . as other persons not so affected but similar in their ability or inability to work." Peifer v. Bd. of Prob. & Parole, 106 F.4th 270, 276 (3d Cir. 2024) (alterations in original) (quoting 42 U.S.C. § 2000e(k)) (citations omitted).   To establish a prima facie case of failure to accommodate under the PDA, the worker must establish that "(1) 'she belongs to the protected class,' (2) 'she sought accommodation,' (3) 'the employer did not accommodate her,' and (4) 'the employer did accommodate others similar in their ability or inability to work.'"   Id. at 278 (quoting Young, 575 U.S. at 229).   While there is no dispute that Brewer can satisfy the first element of her prima facie case, i.e., that she was pregnant, KeyBank argues in its Motion for Summary Judgment that Brewer has failed to establish the other essential elements.   We agree.

Brewer claims that KeyBank failed to accommodate her by denying her a medical leave of absence and refusing to permit her to return to work on February 23, 2022 with accommodations. (Brewer Mem. at 18.)   However, Brewer acknowledges that she was granted maternity leave, FMLA leave, STML, and long-term disability leave.   (See Brewer Dep. at 190, 211-13.) Accordingly, she has identified no medical leave that she requested and KeyBank denied.[7]

---

[7] Brewer does not contend that she sought parental leave, which is not medical leave, as a PDA accommodation.

Moreover, while Brewer argues that KeyBank refused to allow her to return to work on February 23, 2022, there is actually no evidence in the record that she requested to return to work on that date.   Indeed, Brewer testified at her deposition that she did not tell anyone at KeyBank that she was able to return to work on February 23, 2022.   (Id. at 55-56.)   She further made clear at her deposition that she did not desire to return to work that day but, rather, sought to immediately commence ten weeks of parental leave.   (Id. at 219, 254.)   In the absence of any evidence that she requested to resume working on February 23, 2022, Brewer plainly cannot prove that KeyBank refused to allow her to do so.

We also observe that Brewer has not identified any evidence in the record that could support the fourth element of her prima facie case, i.e., that KeyBank "accommodate[d] others similar in their ability or inability to work."   Peifer, 106 F.4th at 278 (quotation omitted).   Indeed, she has presented no evidence regarding KeyBank's treatment of other employees at all.   Under all of these circumstances, we conclude that Brewer has failed to establish a prima facie case of pregnancy discrimination based on a failure to accommodate theory.   We therefore grant KeyBank's Motion for summary judgment in its favor on this claim and deny Brewer's cross-Motion for summary judgment in her favor on this claim.

### 3.  Harassment/Hostile Work Environment

Brewer's third PDA claim is one based on harassment/hostile work environment. KeyBank argues that we should enter judgment it its favor on this claim because, inter alia, it is time-barred.   It is well established that, as a precondition to filing an employment discrimination suit under Title VII, a plaintiff must exhaust her administrative remedies.   Webb v. City of Philadelphia, 562 F.3d 256, 262 (3d Cir. 2009) (citations omitted)).   Specifically, a Title VII plaintiff "must file a charge [of discrimination] with the EEOC within 300 days of the complained

of action or the suit is time-barred." Bartos v. MHM Corr. Servs., Inc., 454 F. App'x 74, 77-78 (3d Cir. 2011) (footnote omitted) (citing Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 109-10 (2002)).

KeyBank argues that Brewer's PDA harassment/hostile work environment claim is time-barred because it was not filed within 300 days of the last alleged act of harassment.   Specifically, KeyBank argues that the last day that Brewer could have endured harassment on the job was August 25, 2021, which was her last day at work.   Brewer did not file her Charges of Discrimination with the EEOC until November 23, 2022, which was 455 days later.

 Brewer responds that her claims are not time-barred, relying on application of the continuing violation doctrine.   "[C]ourts recognize that a hostile work environment 'cannot be said to occur on any particular day.   It occurs over a series of days or perhaps years,' unlike discrete acts." Mudie v. Phila. Coll. of Osteopathic Med., No. 22-2132, 2023 WL 6210754, at *3 (3d Cir. Sept. 25, 2023) (quoting Morgan, 536 U.S. at 115).   "To account for this, courts apply the continuing violation doctrine." Id.   Under that doctrine, "discriminatory acts that are not individually actionable may be aggregated to make out a hostile work environment claim." Mandel v. M & Q Packaging Corp., 706 F.3d 157, 165 (3d Cir. 2013).   Therefore, "when at least one component act of a hostile work environment occurred within the limitations period, courts may consider earlier component acts that are 'part of the same unlawful employment practice.'" Mudie, 2023 WL 6210754, at *3 (quoting Doe v. Mercy Cath. Med. Ctr., 850 F.3d 545, 566 (3d Cir. 2017)).   At the same time, where none of the acts that occurred within the limitations period are suggestive of discrimination, they cannot be used as a hook to make older, otherwise untimely discriminatory acts actionable.   Id.

Brewer argues that she was subjected to continued harassment within 300 days of filing

22

her EEOC Charge because KeyBank refused to allow her to return to work on February 23, 2022, and terminated her on March 9, 2022.   However, the Third Circuit has stated that discrete, individually-actionable acts, such as wrongful termination, cannot be aggregated with other acts to create a continuing violation.   Chieke v. Dep't of Corr., 811 F. App'x 770, 771 (3d Cir. 2020) (citing O'Connor v. Newark, 440 F.3d 125, 127 (3d Cir. 2006)).   Accordingly, Brewer may not rely on her March 9, 2022 termination to bring her hostile work environment claim within the statute of limitations.   She also may not rely on KeyBank's alleged refusal to permit her to return to work on February 23, 2022 to render her hostile work environment claim timely, because, as stated above, there is no evidence that she actually asked—and KeyBank refused to permit her— to return to her job on that date.   Accordingly, Brewer has identified no evidence to support her assertions that KeyBank engaged in any action that was suggestive of discrimination within 300 days of her filing of her EEOC claim so as to render her PDA hostile work environment claim timely.[8]   We thus grant summary judgment in KeyBank's favor on Brewer's harassment/hostile work environment claim based on its untimeliness.

---

[8] KeyBank also argues that all of Brewer's PHRA claims (discrimination, failure to accommodate, retaliation, and hostile work environment) are time-barred because they were not filed with the PHRC within 180 days after the last alleged act of discrimination.   43 Pa. Stat. § 959(h); Mandel, 706 F.3d at 164 ("To bring suit under the PHRA, an administrative complaint must first be filed with the PHRC within 180 days of the alleged act of discrimination." (citing 43 Pa. Stat. § 959(h))).   By Brewer's own account, the last discrete employment action that KeyBank took against her was her termination on March 9, 2022.   Accordingly, under Pennsylvania law, Brewer was required to file her PHRA claims no later than September 5, 2022, i.e., 180 days later. Instead, Brewer did not file her administrative complaint with the PHRC until November 23, 2022. Significantly, Brewer does not respond to KeyBank's argument that her PHRA claims are time-barred.   In fact, she does not even mention her PHRA claims in her response to KeyBank's Motion.   Under these circumstances, where Brewer plainly did not file a timely Charge of Discrimination with the PHRC, we conclude that all of her PHRA claims are time-barred, and we enter judgment in KeyBank's favor on all of those claims.

### 4. Retaliation

Brewer asserts claims of retaliation under the PDA, claiming that KeyBank retaliated against her on account of her pregnancy. Title VII's antiretaliation provision provides that "an employer may not 'discriminate against' an employee 'because,' among other things, the employee 'has opposed any . . . unlawful employment practice.'" Peifer, 106 F.4th at 279 (quoting 42 U.S.C. § 2000e-3(a)). "To make out a prima facie case of retaliation, therefore, a plaintiff must show that (1) 'she engaged in a protected activity,' (2) 'she suffered an adverse employment action,' and (3) 'there was a causal connection between the participation in the protected activity and the adverse action.'" Id. (quoting Carvalho-Grevious v. Del. State Univ., 851 F.3d 249, 257 (3d Cir. 2017)). As with a PDA discrimination claim, a PDA retaliation claim grounded on circumstantial evidence is subject to the burden-shifting framework set forth in McDonnell-Douglas. Anderson v. Boeing Co., 694 F. App'x 84, 86 (3d Cir. 2017). Thus, "[a]fter a prima facie case is established, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its action or decision." Id. (citing McDonnell-Douglas, 411 U.S. at 802). "If the employer successfully articulates one, the burden returns to the employee, who must show by a preponderance of the evidence that the employer's proffered reason is pretextual." Id. (citing McDonnell-Douglas, 411 U.S. at 804).

Here, Brewer claims that she engaged in protected activity when she requested a medical leave of absence and that she was subjected to an adverse employment action for doing so when KeyBank terminated her employment on March 9, 2022.[9] KeyBank argues, as it did with

---

[9] Brewer also claims that she was subjected to a retaliatory adverse employment action when KeyBank refused to permit her to return to work on February 23, 2022. However, as we have stated twice before, there is no evidence in the record that Brewer asked to return to work or that KeyBank refused to permit her to return to her job on that date.

Brewer's PDA discrimination claim, that Brewer cannot establish that KeyBank's legitimate nondiscriminatory reasons for her termination were pretextual, and Brewer makes the same arguments in response   Accordingly, for the same reasons that we found that Brewer had failed to point to evidence to support a finding of pretext for her termination with respect to her PDA discrimination claim, we find that she cannot establish pretext with regard to her retaliation claim. We thus grant KeyBank's Motion insofar as it seeks summary judgment in its favor on this claim and deny Brewer's cross-Motion insofar as it seeks summary judgment in her favor on this claim.

### B.  FMLA Interference

In Count IX of the Complaint, entitled "FMLA Interference," Brewer alleges that she engaged in protected conduct when she requested leave because of her pregnancy, that KeyBank thereafter subjected her to adverse employment actions, and that, in doing so, KeyBank interfered with her exercise of her rights under the FMLA.   KeyBank moves for judgment in its favor on this claim.

"When employees invoke rights granted under the FMLA, employers may not 'interfere with, restrain, or deny the exercise of or attempt to exercise' these rights."   Donnelly, 644 F. Supp. at 109 (quoting 29 U.S.C. § 2615(a)(1)).   To establish FMLA interference, a plaintiff must prove that "(1) she was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) the plaintiff was entitled to FMLA leave; (4) the plaintiff gave notice to the defendant of her intention to take FMLA leave; and (5) the plaintiff was denied benefits to which she was entitled under the FMLA."   Id. (citing Capps v. Mondelez Glob., LLC, 847 F.3d 144, 155 (3d Cir. 2017)).   "Unlike a FMLA retaliation claim, '[a]n interference action is not about discrimination, it is only about whether the employer provided the employee with the entitlements guaranteed by the FMLA.'"   Id. (alteration in original) (quoting Callison v. City of

Philadelphia, 430 F.3d 117, 120 (3d Cir. 2005)).

KeyBank argues that Brewer has failed to point to evidence in the record to establish the fifth element of the prima facie case for FMLA interference, i.e., that she was denied FMLA benefits to which she was entitled.   Instead, KeyBank argues, the undisputed facts in the summary judgment record make clear that Brewer exhausted all of her FMLA leave.

Brewer does not respond to this argument by identifying evidence that could establish that she was actually denied FMLA benefits but rather, she responds by recharacterizing her FMLA interference claim as an FMLA retaliation claim, even though the pertinent Count in her Complaint is entitled "FMLA INTERFERENCE."   To prevail on a claim of FMLA retaliation, a "plaintiff must prove that (1) she invoked her right to FMLA-qualifying leave, (2) she suffered an adverse employment decision, and (3) the adverse action was causally related to her invocation of rights." Lichtenstein v. Univ. of Pittsburgh Med. Ctr., 691 F.3d 294, 301-02 (3d Cir. 2012) (citation omitted).   The exact contours of Brewer's belatedly asserted FMLA retaliation claim are not clear, but she states in her Memorandum in Opposition to KeyBank's Motion for Summary Judgment that she is not alleging that KeyBank "violated the FMLA by posting Plaintiff's job in retaliation for [her] taking and exhausting her FMLA."   (Brewer Mem. at 26.)   Rather, she says, her allegation is that KeyBank retaliated against her insofar as it "denied [her] requests to take . . . Parental Leave."   (Id.)

In attempting to establish a causal connection between her taking of FMLA leave and KeyBank's denial of parental leave, Brewer argues only that she told Freas when she first went out on leave that her intention was to take FMLA leave and then parental leave, and that Freas nevertheless posted her job before Brewer could apply for parental leave, knowing that Brewer's job would be protected if she went out on parental leave.   These facts, even if proven, in no way

suffice to establish a causal connection between Brewer's taking of FMLA leave and the denial of parental leave.   Accordingly, even if we were to allow Brewer to assert an FMLA retaliation claim when it was not pled in her Complaint, we would conclude that she has failed to proffer evidence to support it.   We therefore conclude that Brewer has failed to establish a prima facie case of interference or retaliation pursuant to the FMLA, and we grant summary judgment in KeyBank's favor on Brewer's FMLA claim.

## IV.   CONCLUSION

For the foregoing reasons, we grant KeyBank's Motion for Summary Judgment in its entirety, deny Brewer's cross-Motion for Summary Judgment in its entirety, and enter judgment in KeyBank's favor and against Brewer.   An appropriate Order follows.

BY THE COURT:

/s/ John R. Padova, J.

_____

John R. Padova, J.